IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 CR 676 |
| | ) | Honorable Judge John Blakey |
| RICHARD BARNETT, | ) | |
| Defendant. | ) | |

**RICHARD BARNETT'S SENTENCING MEMORANDUM**

Richar Barnett, by and through his attorneys, John M. Miraglia and Joshua B. Kutnick, herein submits facts relevant to 18 U.S.C. §3553 and the Presentence Investigation Report ("PSR"). Mr. Barnett respectfully requests, pursuant to 18 U.S.C. §3553 and *United States v. Booker,* 125 S. Ct. 738 (2005) and its progeny, that this Court impose a sentence of 15 years. In support thereof, Mr. Barnett respectfully submits the following memorandum for the Court's consideration and contends that this sentence is supported by the factors set forth in 18 §U.S.C. 3553(a).

## INTRODUCTION

BARNETT is in agreement with the sentencing guideline calculation presented in the PSR.

Considering the factors outlined in 18 U.S.C. § 3553(a), a total sentence of 15 years coupled with a sufficient term of supervised release is the right, just, and reasonable sentence in this case. BARNETT accepted and continues to accept responsibility for his actions that brought him before the Court.

1

I. **The Sentencing Guideline Range**

A. **Offense Level**

For Count 4, the base offense level for a violation of 18 U.S.C. § 875 is 12. USSG §2A6.1(a)(1). The base level is increased by two levels because it involved two or more threats. USSG § 2A6.1(b)(2)(A) resulting in a level 14.

For Count 5, the base offense level for a violation of 18 U.S.C. § 2251(a) is 32. USSG § 2G2.1(a). The offense is increased by four levels because the minor involved was under 12 years old. USSG § 2G2.1(b)(1)(A). The offense is further increased by two levels because it involved the commission of a sexual act, in this case, by the minor. USSG § 2G2.1(b)(2)(A). Two additional levels are added because the offense involved a knowing misrepresentation of identity by the defendant. USSG §§ 2G2.2(b)(6)(A) and/or (B). The adjusted offense level for Count 4 is 40.

Stipulated Offense 1 is a violation of 18 U.S.C. § 2252A(a)(5)(B) for which the base offense level is 18. USSG § 2G2.2. The offense is increased by two levels because the images depicted a minor under 12 years of age. USSG § 2G2.2(b)(2). The offense is increased 4 levels because the material involved sexual abuse or exploitation of an infant or toddler. USSG § 2G2.2(b)(4)(B). The offense is increased five levels for the defendant's pattern of activity in this matter. USSG § 2G2.2(b)(5). An additional two levels are added for Defendant's use of a computer or interactive computer service in his commission of this crime. USSG § 2G2.2(b)(6). Finally, the offense is increased by five levels because this case involves 600 or more images. USSG § 2G2.2(b)(7)(D). Therefore, the adjusted offense level for Stipulated Offense 1 is 36.

Stipulated Offense 2 is a violation of 18 U.S.C. § 2251(a) for which the base offense level is 32. USSG § 2G2.1(a). The offense is increased by four levels because the images depicted a minor under 12 years of age. USSG § 2G2.1(b)(1)(A). An additional two levels are added for Defendant's use of a computer or interactive computer service in his commission of this crime. USSG § 2G2.2(b)(6)(A) and/or (B). Therefore, the adjusted offense level for Stipulated Offense 2 is 38.

Stipulated Offense 3 is a violation of 18 U.S.C. § 2251(a) for which the base offense level is 32. USSG § 2G2.1(a). The offense is increased by four levels because the images depicted a minor under 12 years of age. USSG § 2G2.1(b)(1)(A). An additional two levels are added for Defendant's use of a computer or interactive computer service in his commission of this crime. USSG § 2G2.2(b)(6)(A) and/or (B). Therefore, the adjusted offense level for Stipulated Offense 3 is also 38.

For Stipulated Offenses 2 and 3, the parties had originally contemplated a two-point increase for the case involving sexual contact. Probation did not apply that increase because there was no sexual contact. USSG § 2G2.1(b)(2)(A).

For purposes of the Multiple Count Adjustment, the units are assigned pursuant to USSG §3D1.4(a),(b), and (c). The greatest adjusted offense level is 40 (Count 5). The offense level is increased by four levels pursuant to USSG §3D1.4 resulting in a combined adjusted offense level of 44.

USSG § 4B1.5(b)(1) applies so five levels are added to the combined adjusted offense level resulting in an applicable offense level of 49. The total offense level is reduced by two for acceptance of responsibility and an reduced by one more level as well. USSG § 3E1.1(a), (b). Because the total offense level is over 43, the level is

treated as 43. Chapter 5, Part A (comment n.2).

### B. Criminal History Category

Barnett's criminal history is limited to a single traffic violation from when he was 21 years old for driving without of license. He pled guilty and was fined $200. He receives no criminal history points for this offense. §§ 4A1.2(c)(1) and (e)(3).

### C. Advisory Guideline Range

With a combined adjusted offense level of 43 and a criminal history category I, the resulting advisory guideline range is life.

### II. The Factors Enumerated in 18 U.S.C. 3553(a) of the Sentencing Reform Act Weigh in Favor of a Sentence of no more than 15 years.

#### A. RICHARD BARNETT's history and characteristics

Richard Barnett is a highly experienced electronics professional with over 16 years of experience in the industry. He served 14 years of active duty in the United States Navy, where he gained extensive experience in aviation electronics maintenance on naval aircraft.

After his honorable discharge from the Navy, Barnett continued his career in public service, working with the Federal Aviation Administration (FAA) and the Transportation Security Administration (TSA). In these roles, he developed specialized skills in anti-terrorism force protection and gained extensive experience managing personnel and multi-million dollar aircraft maintenance programs.

#### B. Post-Offense Rehabilitation & Conduct:

Since his incarceration, Richard Barnett has made exemplary use of his time while incarcerated at the MCC by engaging in a wide range of educational and personal development programs offered there. He has earned numerous certificates that demonstrate his commitment to self-improvement and readiness to reintegrate positively into society.

BARNETT has taken significant steps in both professional and personal growth. On the professional side, he completed courses such as a licensed food handler guide, business planning and marketing, computer science foundations, credit management, and job search strategies for returning citizens. Specific certificates of completion of these various training will be attached to this filing.

In terms of personal growth and development, BARNETT completed a course in natural meditation aimed at reducing stress and improving relationships. He also engaged in emotional self-regulation training, interfaith cooperation activities, and veteran resilience programs, which collectively fostered his emotional and spiritual well-being. Additionally, he completed studies in Christian doctrine and gospel, and courses on world governments, further enriching his knowledge and perspective. Specific certificates of completion of these self-help programs will be attached with this filing.

These accomplishments reflect BARNETT's proactive approach to his rehabilitation and his readiness to contribute meaningfully to society upon release.

5

### C. The harshness of imprisonment during the COVID-19 pandemic supports a sentence of 15 years imprisonment.

The COVID-19 pandemic markedly affected the nature of imprisonment and has altered the landscape for sentencing. As this Court is aware, 18 U.S.C. § 3553(a) "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary,' to accomplish the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (quoting 18 U.S.C. § 3553(a)); *see also Holguin-Hernandez*, 140 S. Ct. 762, 766 (2020). With COVID, it is necessary to examine this statutory provision in a more deliberate way. Because of COVID-19, Mr. Barnett spent approximately 24 months essentially in lockdown conditions, much like solitary confinement, subjected to the constant fear of contracting a deadly disease, unable to assist his family in ensuring they are safe, and unable to visit family members or even his attorney. In March 13, 2020, the BOP modified its operations to respond to the spread of COVID-19, and individuals in every institution were "secured in their assigned cells/quarters to decrease the spread of the virus." Family and friends were prohibited from visiting.

Incarcerated individuals who are fortunate enough to have family nearby who visit or inmates who are supported by phone calls and video visits cherish those family contacts as one of the few remaining connections they have to the outside world. The COVID lockdowns in prisons and jails robbed incarcerated individuals of these vital contacts, an essential element to mental health.

Programming, absent select UNICOR operations, ceased, and movement throughout the facilities was suspended. For a long time, conditions in federal prisons and jails amounted to a total lockdown for almost twenty-four hours a day. See Fed. Bureau of Prisons, *Fed. Bureau of Prisons COVID-19 Action Plan* (Mar. 13, 2020), *https://www.bop.gov/resources/news/20200313_covid-19.jsp* (Phase II). Phase II's modified operations were extended as described in Phase III, Phase IV, Phase V, Phase VI, and Phase VII. Institution lockdown commenced on April 1, 2020 (Phase V) and was subsequently extended through May 18, 2020 (Phase VI) and again through June 30, 2020 (Phase VII). At some facilities, once someone tests positive for the virus, they are put in solitary confinement. *See, e.g.*, Class Action Complaint, *Torres v. Milusnic*, No. 20- cv-04450 (C.D. Cal. May 16, 2020), ECF No. 1, at 55 (Declaration of Joanna Perales) (petitioner placed in Special Housing Unit (SHU) after testing positive for COVID-19); Class Action Petition for Writ of Habeas Corpus, *Hallinan v. Scarantino*, No. 20-hc- 2088- FL (E.D.N.C. May 26, 2020), ECF No. 1-4, at 6 (Declaration of Roger Duane Goodwin) (Petitioner in FCI Butner Medium I moved to the SHU after testing positive for COVID-19). See also Fed. Bureau of Prisons, *BOP Implementing Modified Operations*, https://www.bop.gov/coronavirus/covid19_status.jsp.

During the two-year pandemic Mr. Barnett was on lockdown, he was prohibited from seeing his family, and unable to engage in rehabilitative or productive programming. In addition, he was at risk of contracting COVID-19 or a variant of the disease. CDC guidance, such as social distancing, was impossible to achieve in our

7

federal prisons — particularly during a lockdown. Incarcerated individuals share bathrooms, sinks, showers, and telephones. They eat together and sleep near each other.

Unsurprisingly, these conditions fueled the spread of COVID-19 throughout BOP facilities during the first year of the pandemic. Thus, because of COVID-19, the time Mr. Barnett spent in custody was necessarily more severe than it ordinarily would. *See also* Fed. Bureau of Prisons, *BOP Implementing Modified Operations*, https://www.bop.gov/coronavirus/covid19_status.jsp).

### D. A sentence of 15 years is the appropriate sentence in this case.

As the Court knows, a criminal sentence should seek to solve the problems caused by the crime productively. Criminal behavior presents a problem for the victim(s), and a court must decide the resolution; for the person who committed the crime, and, most of all, for the community in which the crime was committed. The ideal solution works toward healing the damage suffered by all the players.

Imposing the requested sentence in this case, followed by a supervised release period with conditions, would be a sentence that is sufficient, but not greater than necessary, given the various purposes of sentencing this Court must consider in BARNETT's case. Section 3553(a)(2) reflects the general sentencing purposes of incapacitation (see, e.g., 18 U.S.C. § 3553(a)(2)(A)), retribution (see 18 U.S.C. §3553(a)(2)(A)), deterrence (both general and specific) (see 18 U.S.C. § 3553(a)(2)(B) & (C)), and rehabilitation (see 18 U.S.C. § 3553(a)(2)(D)).

In this case, these sentencing purposes would not be neglected in the least with the recommended guideline sentence offered by the probation department.

The proposed sentence is more than enough to assure the Court of specific deterrence from future misconduct. See 18 U.S.C. § 3553(a)(2)(C).

BARNETT looks forward to showing that his future conduct will be lawful and productive. In short, BARNETT'S proposed sentence satisfies the sentencing objectives of rehabilitation and specific deterrence.

What remains to be accomplished with BARNETT's sentence is achieving the general deterrence and retribution goals. As for deterring others generally, the proposed sentence can accomplish that aim, especially when the certainty of a conviction for a federal felony can have a significant deterrent effect on others. Such a conviction results in the considerable loss of liberty, valuable civil rights, and societal benefits such as job opportunities. It would send the message to others in the community, and BARNETT, that not respecting the law is the sure way to lose a portion of one's freedom to function in the society the laws were designed to protect. But it would also show that a person's mistakes, even serious mistakes, don't define them and that with hard work and opportunity, people can become productive members of society.

### E. CONCLUSION

BARNETT has accepted responsibility for his actions in this matter. Because of his history and personal characteristics, a sentence of 15 years coupled

9

with a period of supervised release is sufficient but not greater than necerssary and the appropriate sentence in this case. A longer sentence of incarceration, on the other hand, is greater than necessary to achieve the sentencing goals outlined in 18 U.S.C. § 3553(a).

WHEREFORE, RICHARD BARNETT respectfully requests that this Court sentence him to a term of **15 years confinement** along with a reasonable period of supervised release with conditions germane to the charges and conduct he has accepted responsibility pursuant to 18 U.S.C. §3553(a).

Respectfully submitted,

*s/ Joshua B. Kutnick*

*s/John Miraglia*
Attorneys for Defendant

**Joshua B. Kutnick**
**900 W. Jackson Blvd,**
**Suite 7E**
**Chicago, Illinois 60607**
312-441-0211
*joshua@kutnicklaw.com*

**John Miraglia Ltd.**
**910 W. Van Buren St. #102**
**Chicago, IL 60607**
312-420-6014
*jmiraglia@gmail.com*

10

## CERTIFICATE OF SERVICE

The undersigned, <u>Joshua B. Kutnick</u>, attorney, hereby certifies that in accordance with FED.R.CRIM. P. 49, FED. R. CIV. P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

## LAVOIA HARDY'S SENTENCING MEMORANDUM

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on <u>February 5, 2025</u>, to counsel/parties that are non-ECF filers.

                                               By: <u>*s/Joshua B. Kutnick*</u>
                                                     Joshua B. Kutnick

**Joshua B. Kutnick**
**900 W. Jackson Blvd,**
**Suite 7E**
**Chicago, IL 60607**

**312-441-0211**

**joshua@kutnicklaw.com**